UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KARSE and ARLENE SIMON, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ABIOMED, INC., MICHAEL R. MINOGUE and ROBERT L. BOWEN,<br><br>Defendants. | No. 1:12-cv-12137-FDS |
| HOLLY SHAMASK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ABIOMED, INC., MICHAEL R. MINOGUE, and ROBERT L. BOWEN,<br><br>Defendants. | No. 1:12-cv-12160-FDS |

**MEMORANDUM OF LAW IN SUPPORT OF THE INSTITUTIONAL
INVESTOR GROUP'S MOTION FOR (1) APPOINTMENT AS LEAD
PLAINTIFF, (2) APPROVAL OF ITS SELECTION OF CO-LEAD COUNSEL
AND (3) CONSOLIDATION OF ALL RELATED ACTIONS**

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ......................................................................... 5

II.    STATEMENT OF FACTS ............................................................................... 7

III.    ARGUMENT ................................................................................................. 9

    A.    THE INSTITUTIONAL INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF ......................................................................................... 9

        1.    The Institutional Investor Group Has the Largest Financial Interest in the Relief Sought by the Class ............................................... 10

        2.    The Institutional Investor Group Satisfies the Requirements of Rule 23 .............................................................................. 11

            a)    The Institutional Investor Group's Claims are Typical of the Class's Claims ......................................................... 11

            b)    The Institutional Investor Group Will Fairly and Adequately Represent the Interests of the Class ......................... 12

    B.    THE COURT SHOULD APPROVE THE INSTITUTIONAL INVESTOR GROUP'S SELECTION OF CO-LEAD COUNSEL ................................................... 13

    C.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED ........................... 14

IV.    REQUEST FOR ORAL ARGUMENT ............................................................ 15

V.    CONCLUSION ............................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

C ASES

*In re BankAmerica Corp. Sec. Litig.*,
　350 F.3d 747 (8th Cir. 2003) ...................................................................................11

*In re Bard Assocs., Inc.*,
　No. 09-6243, 2009 WL 4350780 (10th Cir. Dec. 2, 2009).....................................10

*In re Cendant Corp. Litig.*,
　264 F.3d 201 (3d Cir. 2001)..............................................................................11, 14

*Gilliam v. Fidelity Mgmt. & Research Co.*,
　04-11600NG, 2005 WL 1288105 (D. Mass. May 3, 2005)....................................15

*Goldstein v. Puda Coal, Inc.*,
　827 F. Supp. 2d 348 (S.D.N.Y. 2011)...................................................................10

*Honenstein v. Behringer Harvard REIT I, Inc. et. al.*,
　2012 U.S. Dist. LEXIS 180013 (N.D. Texas Dec. 20, 2012).................................14

*Karse v. Abiomed, Inc., et al.*,
　No. 1:12-cv-12137, filed...........................................................................................15

*Leech v. Brooks Automation, Inc.*,
　06-11068-RWZ, 2006 WL 3690736 (D. Mass. Dec. 13, 2006) ........................10, 14

*In re Lernout & Hauspie*,
　138 F. Supp. 2d 39 (D. Mass. 2001) ..............................................................12, 13

*Lowinger v. Global Cash Access Holdings, Inc.*,
　08 Cv. 3516(SWK), 2008 WL 2566558 (S.D.N.Y. June 26, 2008) .......................16

*In re McDermott Int'l, Inc. Sec. Litig.*,
　No. 08 Civ. 9943 (DC), 2009 WL 579502 (S.D.N.Y. Mar. 6, 2009) ......................11

*Shamask v. Abiomed, Inc., et al.*,
　No. 1:12-cv-12160, filed...........................................................................................15

*State Univ. Ret. Sys. of Ill. v. Sonus Networks, Inc.*,
　No. 06-CV-10040, 2006 WL 3827441 (D. Mass. Dec. 27, 2006).............................12, 13, 14

*Swack v. Credit Suisse First Boston*,
　230 F.R.D. 250 (D. Mass. 2005)...........................................................................12

*In re Tronox, Inc.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) .........................................................................................10

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................................7, 10, 11, 15

PSLRA ........................................................................................................................... *passim*

§ 21D(a)(3)(B)(v), 15 U.S.C. § 78u-4(a)(3)(B)(v) .....................................................................14

§ 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §
    78u-4(a)(3)(B)..........................................................................................................................6

**RULES**

Fed. R. Civ. P. 42 ...................................................................................................................6, 15

Fed. R. Civ. P. 23 ............................................................................................................ *passim*

Rule 10b-5.....................................................................................................................................6

The Oklahoma Police Pension and Retirement System ("OPPRS"), City of Hollywood (FL) Employees' Retirement Fund ("Hollywood"), and Tulare County Employees' Retirement Association ("TCERA") (collectively, the "Institutional Investor Group") in connection with the securities class actions filed against Abiomed, Inc. ("Abiomed" or the "Company")[1], respectfully submit this memorandum of law in support of its motion for an Order: (1) appointing the Institutional Investor Group as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (2) approving the Institutional Investor Group's selection of Block & Leviton LLP ("Block & Leviton") and Grant & Eisenhofer P.A. ("Grant & Eisenhofer") as Co-Lead Counsel; and (3) consolidating all related securities class actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.

## I.     PRELIMINARY STATEMENT

The above-captioned securities class action lawsuits arise from allegations concerning violations of the federal securities laws by Abiomed, the Company's CEO, Michael R. Minogue, and its CFO, Robert L. Bowen.  As alleged in the complaints on file before this Court, during the period from August 5, 2011 through and including October 31, 2012 (the "Class Period"), Defendants caused the prices of the Company's publicly traded securities to be artificially inflated by issuing materially false and misleading statements that misled shareholders regarding the Company's business, operations, and prospects.  Specifically, the Company fraudulently assured investors that it had resolved all concerns raised by the United States Food and Drug Administration ("FDA") regarding the Company's improper marketing practices, and overstated its revenues as a result.

---

[1] Two actions against Abiomed, Michael R. Minogue, and Robert L. Bowen (collectively, the "Defendants") for violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder are presently pending in this District.

Pursuant to the PSLRA, this Court must appoint the "member or members" of the class that are the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. §78u-4(a)(3)(B)(i). The PSLRA provides that the "most adequate plaintiff" is the Lead Plaintiff movant that has the "largest financial interest" in the relief sought by the Class, and otherwise satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

The Institutional Investor Group respectfully submits that its members are the "most adequate plaintiff", as defined by the PSLRA, because they have the largest financial interest in the relief sought in this action and otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.  As shown by the PSLRA certifications submitted herewith, the Institutional Investor Group suffered losses of approximately $552,795, under both the first in, first out (FIFO) method and the last in, first out (LIFO) method from its trading of Abiomed shares during the Class Period.[2]

The members of the Institutional Investor Group are precisely the sort of investors Congress envisioned would lead securities class actions when it enacted the PSLRA.  *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist the courts").  Accordingly, the Institutional Investor Group is the "most adequate plaintiff" and respectfully requests that it be appointed as Lead Plaintiff and that its motion otherwise be granted.

---

[2] *See* Certifications of OPPRS, Hollywood, and TCERA, attached as Exhibit B, to the Declaration of Jeffrey C. Block ("Block Decl.").  In addition, charts setting forth calculations of OPPRS's, Hollywood's, and TCERA's losses are attached as Ex. C to the Block Decl.

## II.     STATEMENT OF FACTS

Abiomed is a Delaware corporation with its principal place of business in Danvers, Massachusetts.  Founded in 1981, Abiomed manufactures, markets, and sells various types of medical devices designed for circulatory support and continuum of care in heart recovery to acute heart failure patients.  The Company's flagship product is its Impella 2.5 Cardiac Support System ("Impella 2.5").

Plaintiffs allege that during the Class Period, Defendants made false or misleading statements and/or failed to disclose the severity of the FDA's concerns over the Company's marketing practices.  The omission of such material facts artificially inflated the price of the Company's securities.  As a direct and proximate result of this conduct, Plaintiffs and the Class purchased Abiomed securities at artificially inflated prices and suffered losses when the truth was revealed.

In 2008, Abiomed received clearance from the FDA to market and sell the Impella 2.5 in the United States.  Sales of medical devices cleared by the FDA, however, must comply with the Federal Food, Drug, and Cosmetic Act (the "Act"), which prohibits selling or promoting devices for unintended uses at the time of FDA clearance.

The FDA sent Abiomed a letter dated January 28, 2010 informing Abiomed that its promotional and marketing materials were making claims about the Impella 2.5 that were inappropriate and not supported for its intended use.  No disclosure of this letter was made to Abiomed's shareholders at the time.  The FDA then sent Abiomed a formal Warning Letter on June 10, 2011 (the "Warning Letter") again informing Abiomed that it was "marketing the IMPELLA [2.5] device in the United States without the required marketing clearance or approval, in violation of" the Act.

Defendants disclosed the Warning Letter to investors in the Company's 2011 Second Quarter Form 10-Q, filed with the United States Securities and Exchange Commission ("SEC") on August 5, 2011.  Defendants sought to allay investors' concerns with regard to the Warning Letter stating in its 2011 Second Quarter 10-Q that "[w]e have cooperated with the FDA in addressing its concerns and believe that we have resolved the matter without any penalties."  In its Form 10-K for its year ending 2011, filed with the SEC on June 4, 2012, Abiomed disclosed that in April 2012 "we received a follow up letter from the FDA stating that some of our promotional materials continued to market the Impella 2.5 in ways that are not compliant with FDA regulations.  We are cooperating with the FDA in addressing its concerns."

Although Defendants sought to assure investors that they believed that all matters were resolved with the FDA or that they were cooperating in addressing the FDA's concerns, Defendants were misleading investors.  On November 1 2012, prior to the opening of the markets, Abiomed disclosed that the United States Department of Justice ("DOJ") commenced an investigation "focused on the Company's marketing and labeling of the Impella 2.5."

Thus, contrary to Defendants' prior representations, Abiomed had not "addressed the FDA's concerns" and the matter was not "resolved."  Abiomed's stock plummeted on the news of the DOJ investigation, falling from $19.82 per share on October 31, 2012 to close at $13.61 per share on November 1, 2012, a one-day drop of 32%.  This erased almost $250 million of Abiomed's market capitalization in a single day.

As a direct and proximate result of Defendants' false and misleading statements and omissions of material facts, the Company's stock value has dropped dramatically and Plaintiffs and other Class members have suffered significant damages.

The PSLRA permits any member of the purported class to move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed.  *See* 15 U.S.C. §78u-4(a)(3)(A)(i)(II).  The Institutional Investor Group has satisfied this requirement by filing this motion.

## III.   ARGUMENT

### A.   THE INSTITUTIONAL INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. §78u-4(a)(3)(B)(i).  In that regard, the Court is required to determine which movant or group of movants that have timely filed a motion seeking Lead Plaintiff status has the "largest financial interest" in the relief sought by the Class and has made a *prima facie* showing of adequacy and typicality under Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).  If the movant or group with the largest financial interest satisfies the applicable Rule 23 criteria, it is presumed to be the "most adequate" plaintiff.  *Id.*  That presumption can be rebutted "only upon ***proof***" that the movant "will not fairly and adequately protect the interests of the class."  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (emphasis added).  Accordingly, courts in this District and others typically engage in a two-step inquiry to determine which plaintiff should be appointed Lead Plaintiff by (1) identifying which plaintiff has the largest financial interest, and then (2) determining whether that applicant meets the adequacy and typicality requirements of Rule 23(a) of the Federal Rules of Civil Procedure.  *See Leech v. Brooks Automation, Inc.*, 06-11068-RWZ, 2006 WL 3690736, at *1 (D. Mass. Dec. 13, 2006); *see also*, *Goldstein v. Puda Coal, Inc.,* 827 F. Supp. 2d 348, 353 (S.D.N.Y. 2011); *In re Tronox, Inc.*, 262 F.R.D. 338, 343 (S.D.N.Y. 2009).

The appointment of a group of class members as Co-Lead Plaintiffs is appropriate under the PSLRA.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also, e.g.*, *In re Bard Assocs., Inc.*, No. 09-6243, 2009 WL 4350780, at *2 (10th Cir. Dec. 2, 2009) (denying writ of mandamus to individual investor; district court appointed group of three investors as co-lead plaintiffs); *In re BankAmerica Corp. Sec. Litig.*, 350 F.3d 747, 749 (8th Cir. 2003) (noting that district court had "appointed a seven-member lead plaintiff group to represent the NationsBank classes"); *In re Cendant Corp. Litig.*, 264 F.3d 201, 219 (3d Cir. 2001) (noting that district court had appointed group as lead plaintiff); *In re McDermott Int'l, Inc. Sec. Litig.*, No. 08 Civ. 9943 (DC), 2009 WL 579502, at *2 (S.D.N.Y. Mar. 6, 2009) (noting the "majority of courts, including those in this District . . . permit [] unrelated investors to join together as a group seeking lead-plaintiff status . . . if such a grouping would best serve the class") (alterations in original).

As set forth below, the Institutional Investor Group is exactly the type of lead plaintiff envisioned by Congress in enacting the PSLRA, and it satisfies all of the criteria contemplated by the PSLRA for determining the most adequate lead plaintiff.  As such, the Institutional Investor Group should be appointed as lead plaintiff in this action.

> **1.     The Institutional Investor Group Has the Largest
> Financial Interest in the Relief Sought by the Class**

The Institutional Investor Group believes it has the largest financial interest in the relief sought by the Class.  The Institutional Investor Group purchased over 68,000 shares of Abiomed securities during the Class Period and suffered losses of approximately $552,795 under both LIFO and FIFO.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  *See* Block Decl., Exs. B and C. Accordingly, the Institutional Investor Group believes that it has the largest financial interest of any Lead Plaintiff candidate and should therefore be appointed as Lead Plaintiff.

### 2.    The Institutional Investor Group
#### Satisfies the Requirements of Rule 23

The PSLRA further provides that the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."   15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 222 (3rd Cir. 2001).  At the Lead Plaintiff stage, the initial inquiry "should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy."  *State Univ. Ret. Sys. of Ill. v. Sonus Networks, Inc.*, No. 06-CV-10040, 2006 WL 3827441, at *2 (D. Mass. Dec. 27, 2006); *In re Lernout & Hauspie*, 138 F. Supp. 2d 39, 46 (D. Mass. 2001) (recognizing that a plaintiff seeking appointment as Lead Plaintiff need only make a preliminary showing that he satisfies Rule 23's typicality and adequacy requirements).

### a)    The Institutional Investor Group's
#### Claims are Typical of the Class's Claims

A proposed Lead Plaintiff satisfies the typicality requirement when its claims and injuries "arise from the 'same events or course of conduct' and involve the same legal theory as do the claims of the rest of the class."  *Lernout & Hauspie*, 138 F. Supp. 2d at 46 (citation omitted); *see also Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 264 (D. Mass. 2005) ("To summarize, the typicality analysis is a functional one addressed primarily to the question of whether the putative class representative can fairly and adequately pursue the interests of the absent class members without being sidetracked by her own particular concerns.").  The Institutional Investor Group satisfies the typicality requirement of Rule 23.

The Institutional Investor Group's claims arise from the identical course of conduct by Defendants from which the claims of all other Class members arise.  Like the other Class members, the Institutional Investor Group's members purchased the Company's stock during the Class Period at artificially inflated prices.  Their losses, like the losses suffered by the other Class

members, arise from Defendants' misrepresentations regarding the Company's business, operations and prospects – including the Company's statements regarding the FDA communications and the overstatement of Abiomed's legal and financial standing as a result.

Moreover, Institutional Investor Group's claims arise from the same statutes and legal theories as all other Class members. *See Sonus*, 2006 WL 3827441, at *2 (movant made *prima facie* showing of typicality where there was "no indication that the circumstances of its losses [were] markedly different than those of other class members or [were] based on a legal theory that is not generally applicable").

### b)   The Institutional Investor Group Will Fairly and Adequately Represent the Interests of the Class

The Institutional Investor Group also satisfies the adequacy requirement of Rule 23. This requirement is satisfied if the movant has "common interests and an absence of conflict with the class members and [its] attorneys are qualified, experienced and vigorously able to conduct the litigation." *Lernout & Hauspie*, 138 F. Supp. 2d at 46. The Institutional Investor Group readily meets the adequacy requirements. Its interests are the same as those of other Class members – *i.e.*, to hold Defendants liable for their violations of the federal securities laws and to seek recovery of the damages caused to investors who purchased Abiomed stock at artificially inflated prices during the Class Period. Further, there are no facts that indicate any conflicts of interest between the Institutional Investor Group and other Class members.

In addition, the Institutional Investor Group's members are institutional investors that have the resources and sophistication to vigorously pursue the claims on behalf of the Class. OPPRS is the retirement system for municipal police officers in Oklahoma. As of October 31, 2012, OPPRS had assets of $1.834 billion and approximately 8,412 members. Similarly, TCERA is the retirement system for employees of Tulare County, California, with assets of more than

$970 million and approximately 8,500 members as of the end of fiscal year 2012. Hollywood is the pension fund for the municipal employees of Hollywood, Florida, with assets of more than $235 million as of November 30, 2012.

Finally, as explained below, the Institutional Investor Group has selected Block & Leviton and Grant & Eisenhofer – firms with extensive experience and qualifications in securities litigation – to serve as Co-Lead Counsel for the Class. *See, e.g., Hohnenstein v. Behringer Harvard REIT I, Inc. et. al.,* 2012 U.S. Dist. LEXIS 180013 at * 12 (N.D. Texas Dec. 20, 2012) *(*appointing Block & Leviton lead counsel finding the firm to be "highly experienced in the area of securities litigation and class actions, and hav[ing] successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in the firm's resume."); Block Decl., Ex. E (Firm Biography of Grant & Eisenhofer listing numerous federal securities in which firm has been appointed lead or co-lead counsel). *See also Sonus*, 2006 WL 3827441, at *2 (movant made *prima facie* showing of adequacy where it had "both the ability and incentive to represent the class vigorously" and had "retained experienced counsel to do so"). Accordingly, the Institutional Investor Group satisfies the adequacy requirements of Rule 23.

**B.    THE COURT SHOULD APPROVE THE INSTITUTIONAL INVESTOR GROUP'S SELECTION OF CO-LEAD COUNSEL**

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel, subject to court approval. *See* Section 21D(a)(3)(B)(v), 15 U.S.C. §78u-4(a)(3)(B)(v); *Cendant*, 264 F.3d at 276 (holding that "the Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention"). Consistent with Congressional intent, a Lead Plaintiff's choice of counsel is granted great deference under the law. *See Leech*, 2006 WL 3690736, at *4 ("Courts typically do not disturb a

lead plaintiff's choice of counsel unless doing so is necessary to protect the interests of the class.") (*quoting In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 305 (S.D. Ohio 2005)). The Institutional Investor Group has selected Block & Leviton and Grant & Eisenhofer to serve as Co-Lead Counsel.  Block & Leviton and Grant & Eisenhofer are two of the preeminent litigation firms specializing in representing plaintiffs in securities class action litigation.  Block & Leviton and Grant & Eisenhofer have been appointed sole or co-lead counsel in numerous complex securities class actions nationwide, and have secured some of the largest securities class action recoveries in U.S. history.  *See* Firm Biographies of Block & Leviton and Grant & Eisenhofer, Block Decl., Exs. D & E.

Block & Leviton's and Grant & Eisenhofer's experience in prosecuting securities class actions ensures that this case will be effectively litigated with minimal costs to the Class. Moreover, Block & Leviton and Grant & Eisenhofer have already conducted an in-depth review of the Company's filings with the SEC, press releases and analyst and media reports and filed a complaint against the Company.  Accordingly, the Court should approve Movant's selection of Block & Leviton and Grant & Eisenhofer as Co-Lead Counsel for the Class.

### C.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered."  15 U.S.C. §78u-4(a)(3)(B)(ii).  There are currently at least two related securities class action against Abiomed pending in this District: (1) *Karse v. Abiomed, Inc., et al.*, No. 1:12-cv-12137, filed November 16, 2012; and (2) *Shamask v. Abiomed, Inc., et al.*, No. 1:12-cv-12160, filed November 19, 2012.

14

Consolidation is appropriate where, as here, there are actions pending in the same court that involve common questions of fact or law.   *See* Fed. R. Civ. P. 42(a); *see also Gilliam v. Fidelity Mgmt. & Research Co.*, 04-11600NG, 2005 WL 1288105, at *1 (D. Mass. May 3, 2005) (*citing Seguro de Servicio de Salud De Puerto Rico v. McAuto Sys. Group, Inc.*, 878 F.2d 5, 8 (1st Cir. 1989)).   "[C]onsolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports."   *Lowinger v. Global Cash Access Holdings, Inc.*, 08 Cv. 3516(SWK), 2008 WL 2566558, at *1 (S.D.N.Y. June 26, 2008) (*citing Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 186 (S.D.N.Y. 2006)).   Consolidation of the above-captioned actions is appropriate since both complaints assert similar claims based on the same or similar legal and factual allegations.   In addition, the interests of judicial economy weigh heavily in favor of consolidation given the substantial overlap of common questions of law and fact.   Accordingly, the Court should consolidate the above-captioned actions and any other subsequently filed or transferred shareholder actions that are related to the claims in this matter.

## IV.   REQUEST FOR ORAL ARGUMENT

The Institutional Investor Group hereby respectfully requests oral argument on the instant motion.

## V.   CONCLUSION

For all the above reasons, the Institutional Investor Grouop respectfully requests that the Court: (1) appoint the Institutional Investor Group as Lead Plaintiff; (2) approve the Institutional Investor Group's selection of Co-Lead Counsel; (3) consolidate the related actions; and (4) grant such other and further relief as the Court may deem just and proper.

Dated: January 15, 2013                      Respectfully submitted,

**BLOCK & LEVITON LLP**

By:    /s/ Jeffrey C. Block
          Jeffrey C. Block (BBO #600747)
          Scott A. Mays (BBO #663396)
          Leigh E. O'Neil (BBO #681459)
          155 Federal Street, Suite 1303
          Boston, MA 02110
          Telephone:  (617) 398-5600
          Facsimile:  (617) 507-6020

*Proposed Co-Lead Counsel for the Class*

**GRANT & EISENHOFER P.A.**
Jay W. Eisenhofer
485 Lexington Avenue
New York, New York 10017
Telephone: (646) 722-8500
Facsimile: (646) 722-8501
      and
Geoffrey C. Jarvis
Ned C. Weinberger
123 Justison Street
Wilmington, DE  19801
Telephone: (302) 622-7000
Facsimile: (302) 622-7100

*Proposed Co-Lead Counsel for the Class*

## **CERTIFICATE OF SERVICE**

I, Jeffrey C. Block, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on January 15, 2013.

Dated: January 15, 2013                              /s/ Jeffrey C. Block
                                                     Jeffrey C. Block (BBO 600747)